# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| AMANDA MAYLE, ) | |
| ) | |
| Plaintiff, ) | |
| ) | Hon. Blanche M. Manning |
| v. ) | |
| ) | Case No. 03 CV 8746 |
| EQUIFAX INFORMATION ) | |
| SERVICES, INC., et al., ) | |
| ) | |
| Defendants. ) | |

## MEMORANDUM AND ORDER

Having previously sanctioned the plaintiff and her attorneys by ordering them to pay the defendants' attorneys fees, the sole issue before the court is the reasonableness of the fees requested. For the reasons that follow, the court grants in part and denies in part the defendants' request for fees.

## Background

Amanda Mayle attended Nova Southeastern University in 1993 when she applied for a student loan. Mayle attempted to cancel the loan, but the loan was eventually approved and proceeds in the amount of $1,207.96 were deposited into her school account. Ten years later, she received notice from defendant Nelnet, Inc., that she owed $1,313 on the loan. Mayle investigated and in June 2003 received a fax from Nova Southeastern confirming that the proceeds of the loan had indeed been deposited into her school account in 1993. Nevertheless, Mayle contested the validity of the loan with Nelnet as well as with defendants Trans Union, LLC and Experian Information Solutions, Inc.

Eventually Mayle retained Krohn & Moss and gave them all of the documents she possessed about the loan, including the June 2003 fax she received from Nova Southeastern

confirming the loan. Krohn & Moss filed suit on her behalf alleging violations of the Fair Credit Reporting Act, *see* 15 U.S.C. § 1681 *et seq.*, and defamation. The defendants consequently expended considerable time investigating and answering Mayle's claims. As part of their investigation, the defendants obtained from Nova Southeastern Mayle's student account records, which confirmed that the proceeds of the loan had been deposited. The day after receiving Mayle's records from Nova Southeastern, the defendants made a written demand that Mayle dismiss all her claims with prejudice, which she did.

The defendants subsequently moved for sanctions, specifically the attorneys fees they incurred defending against Mayle's frivolous claims. The court denied sanctions under Federal Rule of Civil Procedure 11 because Mayle dismissed her suit within 21 days of the defendant's written demand. But it granted sanctions against Krohn & Moss under 28 U.S.C. § 1927, which requires an attorney who "multiplies the proceedings in any case unreasonably and vexatiously" to pay "fees reasonably incurred because of such conduct." It also granted the request for sanctions against Mayle under 18 U.S.C. § 1681n(c), which entitles a prevailing defendant to reasonable attorney's fees from a plaintiff who proceeded under the Fair Credit Reporting Act "in bad faith or for the purposes of harassment."

The court awarded the defendants the fees they requested, but upon reconsideration, struck the award and directed the defendants to substantiate their requests by submitting supporting documentation. The defendants have now documented fees and costs in the amount of $27,644.25 for Nelnet, $10,157.19 for Experian, and $29,541.95 for Trans Union. Mayle contends that the amount of time the defendants' attorneys devoted to defending against her suit is excessive, and asks the court to reduce the hours allowed substantially.

## Analysis

*Fair Credit Reporting Act*

The Fair Credit Reporting Act permits consumers to sue credit reporting agencies for disseminating false information about their credit histories. *Sarver v. Experian Information Solutions*, 390 F.3d 969, 971-72 (7th Cir. 2004). Consumers can recover actual damages for negligent violations of the Act, plus punitive damages for willful violations. *Stergiopoulos & Ivelisse Castro v. First Midwest Bancorp, Inc.*, 427 F.3d 1043, 1046 (7th Cir. 2005). Mayle requested punitive damages, alleging in her complaint that the defendants had "deliberately" and "willfully" disseminated derogatory information about her credit history, which caused Mayle "emotional distress" and "mental anguish," and impaired her ability to get credit. She set forth similar allegations to support her state law claim for defamation.

While the Act imposes stiff penalties on defendants who violate its provisions, it also penalizes plaintiffs who file false claims under the Act. Specifically, the Act directs that:

> [u]pon a finding by the court that an unsuccessful pleading, motion, or other paper filed in connection with an action under this section was filed in bad faith or for purposes of harassment, the court shall award to the prevailing party attorney's fees.

15 U.S.C. § 1681n(c). In its order dated March 18, 2005, the court previously determined that Mayle violated § 1681n(c):

> both Mayle and Krohn & Moss acted unreasonably in filing this action because they knew (or should have reasonably known) that the claims against Defendants were frivolous. Prior to the filing of this action, both Mayle and Krohn & Moss had documentation that the Loan was dispersed to Mayle's student account with Nova.

Therefore, under § 1681n(c), as well as 28 U.S.C. § 1927, defendants are entitled to fees. However, before awarding fees, the court must ensure that the defendants' request for fees is

"reasonable in relation to the work expended in responding to the pleading, motion, or other paper." 15 U.S.C. § 1681n(c).

***Reasonableness Of Fees***

Mayle has not taken issue with the hourly rates charged by defendants' attorneys, but rather objects to the amount of time attorneys billed. When determining whether counsel expended a reasonable amount of hours, the court must ensure that counsel exercised proper "billing judgment;" that is, the court may allow only those fees that would normally be billed to a paying client. *Hensley v. Eckerhart*, 461 U.S. 424, 441 (1983). The court will not, however, "eyeball" the fee request and cut it down by an arbitrary percentage, even if the request seems excessive, in the absence of objections stated with particularity and clarity. *People Who Care v. Rockford Bd. of Educ. Sch. Dist. No. 205*, 90 F.3d 1307, 1314 (7th Cir. 1996); *Ohio-Sealy Mattress Mfg. Co. v. Sealy, Inc.*, 776 F.2d 646, 664 (7th Cir. 1985). The defendants bear the burden of demonstrating that their request for fees is reasonable, and must submit evidence supporting the hours worked and rates claimed. *See Spellan v. Board of Educ.*, 59 F.3d 642, 646 (7th Cir. 1996).

The court has wide discretion to adjust the fees requested in light of any objections. *Moriarity ex rel. Local Union No. 727, Int'l Bhd. of Teamsters Pension Trust v. Svec*, 429 F.3d 710, 717 (7th Cir. 2005). In exercising its discretion, the court will draw upon its knowledge of the history of this case, its review of the pertinent pleadings and briefs, and its years as a judge and practicing attorney as well as its familiarity with the customs of attorneys in the area. The court also notes that it has reviewed all of the parties' briefs, affidavits, and attachments, and has analyzed for itself the bills submitted by defendants' counsel. The court will also keep in mind that while Mayle's complaint was fairly straightforward, its frivolousness did not come to light

until after considerable diligence on the part of the defendants and their attorneys who eventually uncovered the document from Nova University that undermined Mayle's claim.

The court acknowledges that at first blush the defendants' requests appear steep. Added together, the requests exceed $65,000, dwarfing the relatively meager $1,200 student loan from which this case stems. This enormous disparity underscored the court's need to diligently review defendants' fee requests and ensure that only those fees that are reasonable be awarded.

However, when determining whether the hours the defendants' attorneys billed were reasonable, the court must also bear in mind the potential liability the defendants faced. Defendants' liability would have been based not upon the $1,200 value of Mayle's loan, but rather would have been based upon actual damages Mayle suffered as a result of inaccuracies in her credit report. Even more significant, because Mayle included allegations that the defendants violated the Fair Credit Reporting Act willfully and libeled her, the defendants faced punitive damages in the tens or even hundreds of thousands of dollars.

Accordingly, the court has thoroughly reviewed the defendants' billing statements in order to identify any instances of work billed by the defendants' attorneys which was not reasonable. As detailed below, fees for work the court has identified as unreasonable will not be awarded. However, for work the court believes was performed reasonably, fees will be awarded to the defendants as required under both the Fair Credit Reporting Act, *see* 15 U.S.C. § 1681n(c), as well as 28 U.S.C. § 1927.

### *Nelnet's Fees*

With all that in mind, the court turns first to Nelnet's request for $27,644.25 in costs and fees. Mayle objects first to the amount of time Nelnet's attorneys spent drafting pleadings and discovery requests, as well as responses to Mayle's discovery requests. In all, Nelnet attorneys

billed 31.3 hours researching Mayle's claims, discussing them with their client, drafting pleadings and attending court.  In addition, Nelnet attorneys billed 42.1 hours on discovery, including reviewing plaintiff's requests for discovery, reviewing documents from their client and producing them to Mayle, and drafting discovery requests and reviewing Mayle's responses.

Mayle's objection that Nelnet attorneys spent too much time preparing their defense is peculiar.  She attempts to portray the time Nelnet's attorneys billed as excessive when compared to the time her attorneys spent on similar tasks, yet spending too little time on investigation and preparation is what resulted in the sanctions leveled against her and her counsel.  Had she and her attorneys invested more time in reviewing Mayle's documents, they would have realized she had no claim.  Consequently, her criticism of the time Nelnet invested in this case is not persuasive.

Beyond that, the 70 or so hours Nelnet spent on pleadings and discovery does not strike the court as excessive.  According to billing records, much of the time was necessitated by Mayle herself.  For instance, defendants had to respond to her complaint, requests for discovery, and requests to admit.  To its credit, Nelnet attempted to keep down its costs by procuring Mayle's consent to the release by Nova Southeastern of her student account records, avoiding the expense of obtaining the records by subpoena.  Nelnet billed very little between the time it forwarded Mayle's consent to Nova Southeastern and when Nova Southeatern responded with documents that showed loan proceeds deposited into Mayle's student account.  The day after Nelnet received those documents, it wrote Mayle demanding that she drop her suit.  In sum, it appears from the billing records that Nelnet's attorneys incurred most of their time responding to Mayle's pleadings and discovery requests, while obtaining records of Mayle's student account as

quickly and cheaply as possible. Accordingly, the fees Nelnet incurred for pleadings and discovery appear to be reasonable.

Next, Mayle objects to the time Nelnet devoted to its motion for sanctions. A party entitled to fees is also entitled to the time spent on a motion for fees. *Stark v. PPM America, Inc.*, 354 F.3d 666, 674 (7th Cir. 2004) (affirming fees incurred drafting motion for fees). According to Nelnet's affidavits, its attorneys billed more than 50 hours researching and drafting its motion for sanctions under Rule 11, 28 U.S.C. § 1927 and 15 U.S.C. § 1681n(c).

The court agrees with Mayle that 50 hours is excessive, especially given that 50 hours is not much less than the total time Nelnet spent on pleadings and discovery. Nelnet contends that it "did not decide to file its Motion for Sanctions lightly," and therefore "thoroughly researched" whether such a motion would be prudent. Although the court appreciates the thought that Nelnet put into its decision to seek sanctions, the court is not convinced that the thought process should have taken the better part of 50 hours. Nelnet had already determined that Mayle had no claim. Beyond that, it should not have taken more than 10 hours to conclude that Mayle's suit was frivolous and warranted sanctions. Add to that another 15 hours for drafting the motion and reviewing Mayle's response (Experian's attorneys drafted the reply), the court believes that a reasonable amount of time to devote to the motion for sanctions was 25, not 50, hours. (The court notes that Nelnet's motion for sanctions under Rule 11 failed, but Nelnet's motion also asserted two other bases for sanctions which succeeded. The court concludes that the unsuccessful Rule 11 portion of the motion for sanctions accounted for an insignificant amount of Nelnet's work preparing the motion, and, accordingly, does not believe that any additional reduction in time is appropriate).

Next, Mayle contends that Nelnet is not entitled to recover any of its fees for responding to her motion for reconsideration of this court's order granting the motion for sanctions. In support, Mayle asserts that she "has every right to defend herself and should not be forced to compensate Defendant for its reply." The court understands Mayle to be distinguishing her frivolous complaint, which she was not entitled to file, from her motion for reconsideration, which succeeded partially. However, even though Mayle convinced the court that the defendants should be required to substantiate their requests for fees, the vast majority of Mayle's motion merely rehashed the arguments she made when opposing the motion for sanctions. A motion for reconsideration is not a party's second chance to make its argument hoping to persuade the court that its ruling was wrong. *Talano v. Northwestern Medical Faculty Foundation, Inc.*, 273 F.3d 757, 762 (7th Cir. 2001). Furthermore, as discussed earlier, Nelnet is entitled to recover fees it spends seeking sanctions, or in this case preserving its award of sanctions. *See Stark*, 354 F.3d at 674. Accordingly, Nelnet is entitled to the fees it incurred responding to her mostly frivolous motion for reconsideration.

Finally, Mayle objects to paying $52 in cabfare to transport a Nelnet attorney to and from court. The court agrees with Mayle that the offices of Nelnet's attorneys are not so far as to warrant passing along the cost of a cab ride to its client, and in turn to Mayle.

In sum, the court finds, in its discretion, that the number of hours Nelnet's attorneys billed were reasonable except for 25 of the hours they spent on the motion for sanctions. According to the affidavit of Nelnet attorney Scott Frost, and the documents attached, the majority of the work on the motion for sanctions was billed by an associate at an hourly rate of $185(which is also the rate Mayle recommends be used). Accordingly, the court reduces

Nelnet's request for fees by $4,625 (25 x $185), reduces its costs by $52 for cabfare, leaving a total of $22,967.25.

***Experian's Fees***

Mayle also objects to the $10,157.19 in fees that defendant Experian requests. First, she contends that Experian spent too much time preparing its pleadings and engaging in discovery. Specifically, she argues that 9.5 of the hours Experian's attorneys spent on pleadings and discovery should have taken only 4 hours.

For the reasons discussed above, Mayle's criticism is unpersuasive given the shoddy preparation that went into her complaint. The court does not believe that Experian's decision to spend five hours longer preparing its pleadings and discovery than Mayle would have spent is unreasonable.

Next, Mayle objects to the 13.1 hours Experian's counsel spent on the motion for sanctions. The court believes that the hours are reasonable. Although Experian merely joined in the motion drafted by Nelnet, it spent time reviewing Nelnet's draft and Mayle's response, and on drafting the defendants' joint reply. In fact, Experian saved substantial effort by joining in Nelnet's motion for sanctions; had it filed its own motion, its fees could reasonably have been expected to be much higher.

Mayle also objects to the time Experian spent responding to her motion to reconsider the court's order granting the defendants' request for sanctions. The court believes that the entire eight hours Experian spent reviewing Mayle's motion for reconsideration and responding was reasonable. Although Mayle partially succeeded, mostly she rehashed old arguments that were not the proper basis of a motion for reconsideration.

Next, we agree with Mayle that Experian is not entitled to $30 in cab fare spent traveling to and from court.

Finally, Mayle argues that Experian is not entitled to fees exceeding $4,731, the amount Experian sought in its original motion for sanctions for work done through October 2004. Attorneys' billing statements reveal that the fees beyond the $4,731 originally requested were incurred after October 2004, mostly for reviewing Mayle's response to the motion for sanctions, preparing the defendants' reply, and responding to Mayle's motion for reconsideration. As discussed above, these fees are recoverable.

In sum, the court concludes that all but $30 of Experian's request for fees and costs is reasonable, for a total of $10,127.19.

*Trans Union*

As she did with Nelnet and Experian, Mayle objects to the amount of time Trans Union attorneys spent drafting pleadings, attending court, and engaging in discovery. Specifically, she argues that what took Trans Union attorneys 22.2 hours to accomplish should have taken no more than 7 hours. As the court has already stated, Mayle's criticism is unpersuasive, and the court does not believe that the decision by Trans Union's counsel to spend more time preparing a defense than Mayle would have spent was unreasonable. Likewise, the court does not believe that the 31 hours Trans Union devoted to discovery was unreasonable, even though Mayle contends it should have taken no longer than 4.8 hours.

Next, Mayle objects to the 27.6 hours Trans Union's attorneys billed for researching its sanctions motion and reviewing Mayle's response. The court agrees that this number is excessive. According to Trans Union, it spent more than 18 hours researching whether to file a motion for sanctions. For the same reasons the court articulated earlier while analyzing Nelnet's

fee requests, the court does not believe that Trans Union's counsel needed any more than 10 hours to research its motion given the extensive work it had already completed researching plaintiff's claims and engaging in discovery. The court also believes that counsel needed no more than 5 hours to review Mayle's response, especially in light of the fact that Trans Union did not prepare the defendants' reply in support of the motion. Consequently, the court believes that a reasonable amount of time to devote to the motion for sanctions was 15, not 27.6, hours.

In sum, the court finds, in its discretion, that the number of hours Trans Union's attorneys billed were reasonable except for 12.6 of the hours they spent on the motion for sanctions. According to the affidavit of Trans Union attorney Judith Schuch, she worked on the motion for sanctions and her billing rate was $270.00. Accordingly, the court reduces Trans Union's request for fees by $3,402 (12.6 x $270), leaving a total of $26,139.95.

## Conclusion

In sum, the defendants have demonstrated that most, but not all, of the fees they incurred were reasonable, and therefore their petition for fees [56-1] is granted in part and denied in part. The court recognizes that the resulting sanction involves a significant award, especially in light of the relatively small size of Mayle's student loan. But under the provisions of the Fair Credit Reporting Act as well as 28 U.S.C. § 1927, Mayle and her counsel brought the sanctions upon themselves by failing to properly investigate her claim before filing suit.

Accordingly, Mayle and her counsel, Krohn & Moss, are directed to pay fees as follows: $22,967.25 to Nelnet; $10,127.19 to Experian, and $26,139.95 to Trans Union. The defendants' remaining requests for fees are denied.

ENTER:

DATE:  February 14, 2006

*Blanche M. Manning*
Blanche M. Manning
United States District Judge